## FINK v STATE

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided October 12, 1931

Messrs. Hawley & Gilson, Cleveland, and Mr. Milton Friedman, Lorain, for plaintiff in error.

Mr. Ray T. Miller, Prosecuting Attorney, and Mr. Thomas A. Burke, Jr., Cleveland, for defendant in error.

VICKERY, J.

Several errors are urged why this judgment should be reversed. One is an error of law, and it is argued that, inasmuch as this man's testimony was to the effect that he thought himself in danger, had large sums of money about him, and had been held up a week before, and inasmuch as that was not rebutted by the state in testimony addressed to that proposition, he was entitled, as a matter of law, to his release and a verdict of not guilty should have been found for him.

We cannot quite accede to that proposition. In our judgment, the case simply comes down to a question of the weight of the testimony. It surely has been established in Ohio that a jury, or court sitting as a jury, can believe a part and disbelieve a part, or can disbelieve the entire testimony of a witness, or of a series of witnesses, and that, notwithstanding what they swear to, the jury can find against them. This is the law and it must be the law, and that simply means that the argument in this court must be addressed to the weight of the testimony.

Now in this particular case it is argued that the court, sitting as a jury, went outside the record, in that a card which contained this man's record was found in the court's possession, which showed his previous record of convictions. Unfortunately for this argument the record shows that the defendant, when he was on the witness stand in chief, testified to his former record, and of how many times he had been convicted, and what time he had served; and there is nothing in the record to show that this card was before the judge, sitting as a jury prior to the finding of guilty, and, so far as we know, there is nothing in the card which was given to the judge afterwards or before which in any way goes farther than the evidence given in the case by the defendant himself. After the court found the defendant guilty, he called for the report of the probation officer, in order to go into the record more fully, and I presume when that record was furnished the

court made it the basis for his final sentence.

All of the remarks which the court made were made after finding this defendant guilty under the evidence, and might have been properly said on a disposition of the case utimately. The card does not appear to have affected his judgment in the least, so far as finding the defendant guilty. The story this man told, which he said he believed warranted him in carrying a revolver, might well have been discredited by any intelligent man. If the defendant was robbed of the amount of money he said he was, and under the circumstances which he related about the way the robbery occurred, he surely should have reported the robbery to the police. This he did not do. The police were not called there; they had no knowledge of such a robbery having taken place; and the reason the defendant gave why he did not report the robbery was that Dr. Beck, the physician who treated him, had been told by him to notify the police. That there was some sort of a scuffle or fight in which this man was a participant probably is true, but that it occurred over a robbery, or holdup, which would warrant him in carrying a revolver to protect himself, is a question of grave doubt, and the court might readily refuse to believe such a story under the circumstances, especially when Dr. Beck denied that he was told to report the matter to the police and stated that he had no such conversation with the defendant when treated.

The statute says: "If it appear that he was at the time engaged in a lawful business, calling or employment, and that the circumstances in which he was placed justified a prudent man in carrying such weapon for the defense of his person, property or family" and if he carries a revolver under those circumstances, and the jury so finds, they shall acquit him. Now it must be a lawful business, and he must have a reason to carry a revolver because of the danger that he is involved in in his business. He said he was collecting for his brother, and that he had large sums of money about him. He did have large sums of money about him at the time of his arrest, but apparently the court, sitting as a jury, did not believe his story as to where he got this money. He might have been engaged in some other business that was not legitimate, that was not lawful.

Anyway, the whole story of the defendant is tinged with so many matters of doubt that a court, sitting as a jury, might well refuse to believe it. That he had a revolver is conceded; that it was concealed is conceded; that it was loaded is conceded; and if the court refused to believe the defendant's testimony as to why he carried it, and the reason therefor, there is nothing in the record which would warrant a court in coming to any other conclusion than that this defendant was guilty of carrying concealed weapons.

We can only come to the conclusion that the only way in which this court could reverse the judgment would be upon the ground that the verdict was not supported by sufficient evidence, and that would take a unanimous court, and a reviewing court would not be justified in coming to that conclusion from this record.

Now we have treated this case as though the record, the bill of exceptions, was properly signed. As a matter of fact, the trial judge did not sign the bill of exceptions or certify as to its correctness, but he signed only at the place where he receipted when the bill was put in his possession; but he corrected it throughout with his own handwriting, and therefore it is fair to presume that he did have the bill of exceptions, and that he simply overlooked signing it, and that error could probably be corrected. So we have disposed of this case as though the bill had been properly signed; and, after having the whole record before us, and finding that the court did not learn of the former record of this defendant before finding him guilty, other than from the testimony which defendant himself introduced, we can see no error of the court in finding this man guilty; nor any error in the language which the court used, after he had announced the verdict of guilty, as to what disposition he would make of the case, and had announced that he would get the report of the probation officer as to this man's character and reputation, which he apparently did. And from that reputation, as it was furnished him, one cannot say that he committed any error in sentencing this defendant to the penitentiary.

The judgment of the court below will therefore be affirmed.

LEVINE, PJ and WEYGANDT, J, concur.